T. H. HAYES, et al. v. LOUIS GINOCCHIO, et al.

and

J. W. REDDICK, et al. v. T. H. HAYES, et al.

Western Section.    December 20, 1927.

Petition for Certiorari denied by Supreme Court, March 17, 1928.

1. **Appeal and error. Where case is tried before a chancellor sitting as a jury, motion for a new trial is an essential prerequisite to an appeal.**
   A motion for new trial is an essential prerequisite to an appeal where a jury is waived and the case is tried before the court sitting as a jury.

2. **Appeal and error. The decree of a Chancellor sitting as a jury has the same effect as the verdict of a jury.**

The decree of a Chancellor sitting as a jury has the same effect as the verdict of a jury and objections to it on appeal so far as based on finding of facts can be sustained only by showing that there is no evidence to support the decree.

3. **Deeds. In construing deeds the intent of the parties is always considered.**

In an action to construe a deed of trust where it was urged that all of the property intended to be covered was not described in the deed of trust, held all evidence showing the intent of parties will be considered by the court in order that the deed may be properly construed.

4. **Deeds. Deeds will be construed according to the interpretation given them by the parties.**

The practical interpretation which the parties by their conduct have given to a written instrument in cases like this, is always admitted and is entitled to weight. There is no better test of the intention of the instrument. None are less likely to be mistaken. There is no danger of too large an admission. Safer testimony can hardly be presented to relation to any transation occurring in human affairs.

5. **Conveyances. Courts look to the intention alone and not to technical rules in construing conveyances.**

The courts have most wisely abandoned technical rules in the construction of conveyances in this State and look to the intention alone for their guide; that intention to be arrived at from the language of the instrument read in the light of the surrounding circumstances.

Appeal from Chancery Court, Shelby County; Hon. M. C. Ketchum, Chancellor.

Affirmed.

B. F. Booth, of Memphis, for appellant.

Malone & Taubenblatt, Settle & Bentley, H. M. Bomer and Bell & Phillips, of Memphis, for appellee.

HEISKELL, J.  Hayes and Wilson became endorsers on two notes executed by the Tennessee Temple Board Mosaic Templars of America, to the Solvent Savings Bank; one for twelve hundred, twenty-five ($1225) dollars, of date September 29, 1919; and the other for twenty-six hundred ($2600) dollars. The twelve hundred, twenty-five ($1225) dollar note was reduced by partial payments to six hundred, seventy-five ($675) dollars; and the notes sued on are renewals of these two original notes.

Contemporaneously with the endorsement of these original notes, the Tennessee Temple Board executed a written agreement to Hayes and Wilson, in which it was recited that Hayes and Wilson had agreed to endorse these notes; that the proceeds of the notes were to be used to pay on the unpaid purchase on two lots on Beale avenue, describing them; and that the Tennessee Temple Board would execute a trust deed on said property at any time upon request, to secure them as such endorsers.

The suit was originally brought by Hayes and Wilson, as endorsers on said notes, for the use and benefit of the Solvent Savings Bank, the holder thereof; since the suit was brought, the bank has required Hayes, as endorser on the notes, to pay them; so Hayes, now prosecutes this suit for his own benefit.

The Tennessee Temple Board Mosiac Templars of America, is a Tennessee Corporation, organized as a corporation for general welfare and not for profit, and according to its charter, organized for these purposes:

"To erect a hall or lodge building, lodge rooms for a meeting place for the various local lodges of said order; and for office room to be rented, the proceeds of which are to be used for the maintenance and upkeep of said building and the promotion of said order."

The order referred to in this charter, is the Mosiac Templars of America (referred to in this record as the National Order), an Arkansas Corporation, with its headquarters in Little Rock, and having many lodges throughout the United States. The local lodges in the different States also have a central organization in Grand Lodges of the different States, but the local and State organizations are not incorporated.

The Tennessee Temple Board, to carry out the purposes for which it was incorporated on April 30, 1919, purchased from Frank McLaughlin, two adjoining lots of thirty-five foot and thirty-six and one-half frontage, respectively, on the north side of Beale avenue. The consideration for the property was $11,440, of which $2367, was paid in cash, and notes executed with lien retained for balance.

These notes became delinquent and were taken up by the Solvent Savings Bank and a trust deed, executed on March 17, 1921, by the Tennessee Temple Board, Mosaic Templars of America, to secure said bank in the sum of $7861.20. This trust deed recites, that it was given to pay off the lien for purchase money on the McLaughlin deed, but described only one of the lots conveyed by said deed—the thirty-six and one-half-foot lot.

The Mosaic Templars of America, the Arkansas corporation, filed an answer and then by leave of court amended answer and cross-bill. In this answer and cross-bill, it denied that said notes were executed by authority of the Tennessee Temple Board, or for its benefit, or to pay off any indebtedness it owed, or to release a lien on its property, described in the bill; but, that said notes were executed in its name, in fraud, and for the personal benefit of J. B. Woods, its president. It pleaded non est factum on said notes; the history of the title of said property is set out at length, alleging the purchase by it in good faith, of the two notes of thirty-nine hundred, thirty and sixty/100 ($3930.60) dollars from the Solvent Savings Bank, and the assignment of said trust deed to it. It is alleged, that

Bert M. Roddy, cashier of the Solvent Savings Bank, represented that said trust deed constituted a first lien on said property, and made no reference to the two notes of twenty-six hundred dollars ($2600) and six hundred, seventy-five dollars ($675) which are sued on herein, and which were then held by said bank.

It is then set out, that said trust deed described only one of said lots, and that it was really intended that both of said lots should be included.

The prayer of the cross-bill is for a decree on the notes against the Tennessee Temple Board; that a first lien be declared to exist in its favor on both of said lots; and for a sale of the lots to satisfy its said lien.

On the same day, and by the same solicitors, one J. W. Reddick, who signed as Grand Master, undertook to file an answer in the name of the Tennessee Temple Board, Mosaic Templars of America, in which he pleaded non est factum on said notes; that they were executed fraudulently, and that no part of the proceeds thereof, was used in the purchase of said property; that J. B. Woods was not a member of the Mosaic Templars of America, at the time of the filing of the bill; and that Booth sued Woods and others, who were the trustees of the Tennessee Temple Board, a corporation, were not members of said order when they filed their answer on September 5, 1923; and that Woods had not been a member since the expiration of his office of State Grand Master, in August, 1922; that the McLaughlin property, except the seventy-eight hundred, twenty-one dollars ($7821) borrowed from the Solvent Savings Bank had been paid for out of funds belonging to this respondent; and denies that complainant had any lien on said property, and avers, that this suit "was brought mala fides, is a pure frame-up, and is an attempt to defraud your respondent."

Hayes and Wilson filed an answer to this cross-bill, in which they admitted the purchase of the property and the execution of the trust deed to the Solvent Savings Bank, securing the seventy-eight hundred, sixty-one and 20/100 dollars ($7861.20), but they deny that it was intended to embrace both of said lots in said trust deed; they deny that Roddy was authorized to bind the Tennessee Temple Board by any representations he may have made to the Arkansas Corporation in negotiating the sale of said notes to that corporation, and alleged, that he was cashier of the bank which owned the notes; and any statement he may have made was not binding upon the complainants, or said Tennessee Temple Board.

Complainants Hayes and Wilson, also filed an amended bill in which they correct the description of the notes sued on, insisting that it was understood they should have a lien on the property; that the money was used to pay for it, and contending that the Arkansas

Corporation had a trust deed only on the thirty-six and one-half-foot lot, and none on the thirty-five-foot lot.

Thereafter, J. W. Reddick and others, who sued for the use for themselves and all other members of the Mosaic Templars of America, Tennessee jurisdiction, filed their original bill against Hayes and Wilson, and the Tennessee Temple Board, in which they insist that the Temple Board had only the legal title to the property purchased from McLaughlin; that same was purchased for the benefit of the incorporated society represented by the complainants. They deny the validity of the notes sued on by Hayes and Wilson, and plead non est factum. They ask to have their suit consolidated with the Hayes suit and this was done.

The Tennessee Temple Board answered the Hayes and Wilson bill, and Hayes and Wilson answered the Reddick bill, and thus, the issues were made up.

A jury was demanded, but by agreement, was waived, and it was agreed that the case should be tried before the Chancellor on oral testimony, and the case was so heard.

The Chancellor held, that while the thirty-five-foot lot was omitted from the trust deed to the Solvent Savings Bank, yet this was by mistake, and that it was intended by all parties that said deed of trust should cover both lots, and that it was intended that the security of both lots should pass to the Mosaic Templars of America, the Arkansas Corporation, with the assignment of the notes. A decree was rendered in favor of said Arkansas Corporation for the amount of said notes and interest, a first lien declared on the whole property, and a sale ordered under the deed of trust to satisfy the same.

It was held, that Hayes, having paid the notes for which Wilson and he had sued for the benefit of the Solvent Savings Bank was entitled to recover the amount due on same, and was entitled to a lien on the property in question, subject to the first lien of the Arkansas Corporation.

Before the final decree went down, there was a reference, a report of the Clerk and Master, and certain exceptions thereto, which are repeated in the assignments of error.

The Tennessee Temple Board, Mosaic Templars of America, and J. W. Reddick, et al., prayed an appeal from so much of the decree as adjudged the indebtedness in favor of T. H. Hayes, but did not perfect the appeal and now seek a review by writ of error.

Complainant T. H. Hayes, appeals from so much of the decree as is against him, and each of these appellants has assigned errors.

The assignments of J. W. Reddick and others, are as follows:

"The court erred in decreeing that T. H. Hayes was entitled to a decree against the Tennessee Temple Board Mosaic Templars of America, for the sum of $4737.51, on the two fraudulent notes signed

by the embezzler, J. B. Woods, Jr., without authority from either the unincorporated society or the holding corporation.

"The court erred in holding, that the members of the unincorporated body, known as the Mosaic Templars of America, Jurisdiction of Tennessee, had no interest in the Tennessee Temple Board Mosaic Templars of America, and therefore no interest in the property, and accordingly dismissed their bill."

These assignments are simply to say that the decree of the Chancellor, insofar as against these appellants, was erroneous.

The assignments of Hayes, in substance, are:

1. It was error to hold, that the Arkansas Corporation had a lien on the thirty-five-foot lot;

2. There is no evidence to support the findings of fact and decree;

3. It was error to overrule exception to the master's report and allow Ed Kirk, the rental agent, a credit of $741.65 for expenses;

4. It was error to charge the Mosaic Templars of America, with only $1082.93, instead of $1953.35.

These assignments may be reduced to No. 2; "There is no evidence to support the findings and decree." The first is, that the Chancellor was wrong, insofar, as he held against this appellant. The third and fourth go to exceptions to the report overruled by both the Master and the Chancellor.

This was a jury case, the jury was waived and by agreement the case was heard on oral testimony in open court by the Chancellor. A motion for a new trial was therefore, an essential prerequisite to an appeal. It is true, no motion to affirm the decree is made on this ground, but the reason for requiring a motion for a new trial is, that the lower court cannot be put in error without the motion which calls attention to the mistake complained of, and gives the trial court an opportunity to correct the error. Therefore, the appeals in this case cannot be prosecuted in the absence of a motion for a new trial. Toomey v. Atyoe, 95 Tenn., 373; Beatty v. Schenck, 127 Tenn., 63; Choate v. Sewell, 142 Tenn., 487; Rucker v. Mayor and Alderman of Dyersburg, opinion of this court. .

There are in the record, however, petitions by both said appellants for different and additional findings of fact, but in neither is the point made, that there is no evidence to support the findings of fact or the decree. It might be argued, that these petitions, insofar, as they called attention to errors claimed in the findings of the Chancellor, are equivalent to motions for a new trial, if, however, we pass this question, beyond doubt, the decree has the effect of the verdict of a jury and objections to it so far as based on findings of fact, can be sustained only by showing that there is no evidence to support the decree.

Appellants Reddick and others, do not assign error on the ground that there is no evidence to sustain the findings of the Chancellor,

but if there was such an assignment, it is clear that there is evidence to support the findings, that Hayes endorsed notes to raise money that went to pay for the property involved, with the understanding that he should have a lien on the property, and that he paid the amount due on the notes for which the Chancellor gave him a decree.

Appellant Hayes, has an assignment—of no evidence to support findings and decree. His complaint as against the Arkansas Corporation, is that the Chancellor held, that the said corporation was entitled to subject the whole property, both lots, when the trust deed only described one by metes and bounds.

The court found, that it was the intention of all the parties to this whole transaction, that the Arkansas Corporation should obtain the benefit of a lien on both lots. The question is, whether or not, there is any material evidence to support this finding.

The description of the trust which created the lien which passed to the Arkansas Corporation, is as follows:

"Being a part of lot three (3), Block Sixty-two (62) South Memphis on the North side of Beale street. Beginning two hundred and fifty-four feet (254) east of Desota street, now South Fourth street; thence north one hundred and sixty (160) feet; thence east thirty-six and one-half (36½) feet; thence west to the point of beginning.

"Being the same property conveyed into the Tennessee, Temple Board Mosaic Templars of America by a warranty deed from Frank McLaughlin and wife, dated April 30, 1919, and recorded May 1, 1919, in Book 705, page 608, in the office of the Register of Shelby county, Tennessee, to which reference is here made for a more complete description.

"This deed of trust is executed to pay off the lien retained in a deed recorded in Book 705, page 608, Register's Office of Shelby county, Tennessee, the same being for the purchase price of the said land as above described."

The deed referred to, contains a description of both lots, the thirty-six and one-half-foot lot and the thirty-five-foot lot, but in separate paragraphs. The thirty-six and one-half-foot lot comes first and it is evident that the draughtsman of the trust deed, copying from the McLaughlin deed, thought he had copied the description of all the property when he had copied only one lot.

He then added—"Being the same property (not a part thereof) conveyed unto the Temple Board Mosaic Templars of America, by Frank McLaughlin and wife, etc., to which reference is made for a more complete description." The draughtsman then continues—"This deed of trust is executed to pay off the lien retained in a deed recorded in Book 705, page 608, Register's Office of Shelby county, Tennessee, the same being for the purchase money as described above."

This evidently means all the purchase money on all the property conveyed by McLaughlin.

Besides the whole atmosphere surrounding this transaction from the time of the McLaughlin deed, indicates that the two lots were considered as one piece of property. Woods and Roddy, both, called as witnesses by Hayes, say it was so considered. Roddy was cashier of the Solvent Savings Bank and Woods was president of the Tennessee Corporation that took the deed from McLaughlin, and he executed the trust deed to the bank.

Edward Kirk says, the property was put in his hands to collect rents as one piece and he, as directed, collected the rent and turned it over to the bank. Roddy never heard of two pieces of property, and when Scipio Jones, the attorney for the Arkansas Corporation, came over from Little Rock, to see about taking over the notes from the bank, he says Roddy and Settle showed him the property under one fence and led him to believe it was all one piece and embraced in the trust deed. These circumstances show a practical contemporaneous construction by the parties in interest:

> "The practical interpretation which the parties, by their conduct, have given to a written instrument in cases like this, is always admitted and is entitled to weight. There is no better test of the intention of the instrument. None are less likely to be mistaken. There is no danger of too large an admission. Safer testimony can hardly be presented in relation to any transaction occurring in human affairs." Staub v. Hampton, 117 Tenn., 706 on p. 741.

There is certainly evidence of the intention of the parties to this transaction to include both lots in the deed of trust given to the bank and to pass the lien on both lots onto the Arkansas Corporation. Our Supreme Court has recently said, in the case of Dalton v. Elder 153 Tenn., 423:

> "The courts have most wisely abandoned technical rules in the construction of conveyances in this State and look to the intention alone for their guide; that intention to be arrived at from the language of the instrument read in the light of the surrounding circumstances; Williams v. Williams, 16 Lea, 164; Kissom v. Nelson, 2 Heis., 4; Posey v. James, 7 Lea, 98; McNairy v. Thompson, 1 Sneed, 142."

As to the other assignments of appellant Hayes, we repeat, that he is precluded by the rule applicable to concurrent findings of fact by the Clerk and Master, and the Chancellor, even if he is entitled otherwise to have these assignments considered, we are of the opinion therefore, that all assignments of error of both appellants should be overruled and the decree of the lower court affirmed.

Owen and Senter, JJ., concur.